UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| JASON LYNN PHILLIPS, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 1:22-cv-239 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| SHERIFF JEFF CASSIDY, SULLIVAN COUNTY MAYOR, SULLIVAN COUNTY CORRECTIONAL OFFICERS, and SULLIVAN COUNTY SHERIFF'S DEPARTMENT | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a prisoner housed at the Sullivan County Detention Center, has filed a pro se civil rights action against Defendants under 42 U.S.C. 1983 (Doc. 1), along with a motion for leave to proceed *in forma pauperis* (Doc. 4). For the reasons set forth below, the Court will **GRANT** Plaintiff's motion to proceed *in forma pauperis* (*id.*) and **DISMISS** this action for failure to state a § 1983 claim.

### I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion (Doc. 4) that he lacks the financial resources to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when

such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

II. SCREENING OF COMPLAINT

A. Plaintiff's Allegations

From May 27, 2022, to the present, while housed as a pretrial detainee at the Sullivan County Detention Facility, Plaintiff alleges he has been forced to sleep on the floor on a thin mat positioned next to the toilet and shower in an area where mop buckets are dumped, and he has been denied outdoor recreation multiple times. (Doc. 1, at 4.) Additionally, Plaintiff alleges that he was placed on lockdown from June 6 through June 11, 2022, as well as on June 19, 2022, and he was denied the ability to send messages or buy stamps on July 14, 2022. (*Id.*) Plaintiff was denied visitation privileges on June 5, July 7, July 9, and July 12, 2022, and he was threatened by a correctional officer when he inquired about his visitation privileges on June 5, 2022 (*Id.* at 4.) Plaintiff requested a religious book on June 20, 2022 (*Id.*)

According to Plaintiff, on August 19, 2022, a correctional officer informed Plaintiff that he was being moved to a better unit, but he was actually moved to a maximum-security unit where inmates have few or no privileges, and where the minimum standards set forth by the Tennessee Corrections Institute ("TCI") are not followed. (*Id.*) Aggrieved by these

circumstances, Plaintiff asks the Court to compensate him for the pain, suffering, and mistreatment he has endured. (*Id.* at 5.)

B.     **Standard of Review**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

To state a claim under § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a

3

plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

C. **Legal Analysis**

i. *Defendants*

Named as Defendants in this action are Sheriff Jeff Cassidy, the Sullivan County Mayor, Sullivan County Corrections Officers, and the Sullivan County Sheriff's Department. (Doc. 1, at 3.) However, the Sullivan County Sheriff's Department is not a "person" subject to liability under § 1983. *See Anciani v. Davidson Cnty. Sheriff Office*, No. 3:19-cv-169, 2019 WL 1002503, at *2 (M.D. Tenn. Feb. 28, 2019) ("It is well established that in Tennessee federal courts, a sheriff's office or police department is not a 'person' subject to suit under 42 U.S.C. §1983.") (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Therefore, this Defendant will be dismissed.

Plaintiff's suit against the remaining Defendants in their official capacities is the equivalent to suit against Sullivan County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). However, Plaintiff has not alleged any facts from which this Court could infer that his constitutional rights were violated because of an unconstitutional policy or custom of Sullivan County, and therefore, he has failed to state a claim against the County. *See Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs"). Because he has not adequately pled any municipal liability, Plaintiff has likewise

failed to state a claim against Defendants in their official capacities. *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (holding that in action against a state officer acting in an official capacity, "the plaintiff seeks damages not from the individual officer, but from the entity from which the officer is an agent"); *Monell*, 436 U.S. at 690 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

In considering whether Plaintiff has stated a claim against any Defendant in his or her individual capacity, the Court must determine whether Plaintiff has adequately pled that each Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted). This requirement exists because constitutional liability cannot attach to a Defendant solely based on his or her position of authority. *See Iqbal*, 556 U.S. at 676 ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell*, 436 U.S. at 691 (finding that liability under § 1983 may not be imposed merely because a defendant "employs a tortfeasor"). Here, Plaintiff's complaint contains no allegations of wrongdoing by Sheriff Jeff Cassidy or the Sullivan County Mayor, and these Defendants may not be sued based solely on their respective positions of authority. Accordingly, these Defendants will be dismissed, and the Court will consider Plaintiff's allegations regarding the remaining Defendant, the Sullivan County Corrections Officers[1].

---

[1] The Court notes that only one officer, Officer Neely, is mentioned by name in Plaintiff's complaint. (Doc. 1, at 4.) Despite Plaintiff's failure to name the allegedly responsible

### ii. *Conditions of Confinement*

As noted above, Plaintiff is a pretrial detainee. Unlike a convicted prisoner who derives constitutional protections from the Eighth Amendment, a pretrial detainee derives his protections from the Due Process Clause of the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Because "pretrial detainees cannot be punished at all," the proper inquiry in evaluating a detainee's claims of unconstitutional conditions of confinement is "whether those conditions amount to punishment." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 569 (6th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The Sixth Circuit has held:

> [A] conditions-of-confinement claim has two elements. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety.

*Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (internal quotation marks and citations omitted), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In applying this standard, the Court first notes that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (citations and quotations omitted). As to the second element, a defendant demonstrates deliberate indifference to a detainee by acting "deliberately" and "recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"

---

Defendants, the Court considers Plaintiff's allegations to determine whether he is entitled to amend his complaint to identify any additional individual Defendants by name.

*Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Plaintiff alleges that from May 27, 2022, through the signing of the complaint on August 21, 2022, he has slept on a thin mattress on the floor near a toilet, he has been made to shower in the same area where dirty mop water is dumped, and that he has been denied outdoor recreation multiple times. (Doc. 1, at 4.) However, Plaintiff has no constitutional right to sleep on an elevated bed. *Rishton v. Sullivan Cnty. Sheriff's Dep't*, No. 2:07-CV-78, 2010 WL 1257989, at *3 (E.D. Tenn. Mar. 25, 2010); *see also Hubbard v. Taylor*, 538 F.3d 229, 235–36 (3d Cir. 2008) (finding that forcing pretrial detainees to sleep on a floor mattress for three to seven months due to overcrowding is not a constitutional violation).

And while there is no bright line rule regarding an inmate's opportunities to exercise, it is well settled that prisoners are entitled to enough exercise to maintain reasonably good physical and mental health. *Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983). In this case, Plaintiff does not allege that he was denied an opportunity to exercise, or that he faced a complete lack of access to outdoor recreation. Rather, he alleges only that he has been denied outdoor recreation "multiple times" during his incarceration. (Doc. 1, at 4.) This allegation fails to state a constitutional claim, as "there is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners." *Kizer v. Robertson Cnty.*, No. 3:17-cv-00715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)).

Finally, while Plaintiff complains that the facility's showers were left "a nasty, smelly mess" after the mop buckets were dumped, he has not alleged any actual harm, or a substantial risk of harm, because of those conditions. (Doc. 1, at 4.) Accordingly, the Court finds that

Plaintiff's conclusory allegations are insufficient to allow the Court to infer that the conditions of Plaintiff's confinement violate the Constitution, and these claims will be dismissed. *See Iqbal*, 556 U.S. at 678 (finding complaint does not state a claim when it "tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (citing *Twombly*, 550 U.S. at 557).

### iii. Visitation

Plaintiff complains that he was denied visitation privileges on several discrete dates in June and July of 2022. (Doc. 1, at 3–4.) To state a cognizable constitutional claim for the denial of visitation privileges, Plaintiff must demonstrate that his interest in visitation is a liberty interest protected by the Due Process Clause. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

"[I]nmates have no absolute constitutional right to visitation. Limitations upon visitation may be imposed if they are necessary to meet penological objectives such as the rehabilitation and the maintenance of security and order." *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir.1984) (citations omitted). Here, Plaintiff complains that he was denied visitation privileges on four separate dates. (Doc. 1, at 4.) Plaintiff's complaint does not allow the Court to plausibly infer that the denial of privileges for this limited period imposed an "atypical and significant hardship" in the prison context. *See Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (citing *Sandin*, 515 U.S. at 485); *Bazzetta v. McGinnis*, 430 F.3d 795, 803–05 (6th Cir. 2005) (concluding that prison's policy resulting in ban on visitation does not "rise[ ] to the level of

egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause"). Accordingly, this allegation fails to state a constitutional claim.

    *iv.*   **Threats**

Plaintiff contends that he was threatened when he inquired about his visitation privileges [Doc. 1 p. 4]. However, threatening or abusive speech does not constitute "punishment" in the constitutional sense. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Therefore, this allegation fails to state a claim under § 1983.

    *v.*   **Restrictions**

Plaintiff contends that he was prevented from sending messages or buying stamps on July 14, 2022, and that he requested a religious book on May 27, 2022. (Doc. 1, at 4.) While prisoners do not lose all constitutional rights by virtue of their incarceration, they do sometimes face greater restrictions on those rights than they would in the free world. *Beard v. Banks*, 548 U.S. 521, 528 (2006) ("[T]he Constitution sometimes permits greater restriction of [constitutional] rights in a prison than it would allow elsewhere."). Instead, a prisoner retains such "rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections systems." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Here, Plaintiff provides the Court with no facts from which it could conclude that his rights were violated by a one-day inability to purchase stamps or send messages, and his mere request for a book, religious or otherwise, is insufficient to state a plausible constitutional violation. *See Iqbal*, 556 U.S. at 678.

    *vi.*   **Housing**

9
Case 1:22-cv-00239-TRM-SKL    Document 5    Filed 09/22/22    Page 9 of 13    PageID #: 24

Plaintiff maintains that he was moved to a restrictive maximum-security unit on August 19, 2022, where TCI minimum standards were not followed, even though he was informed by Officer Neely that he would be moving to a more favorable unit. (Doc. 1, at 4.)

Claims under § 1983 can only be brought for "deprivations of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law or policy. *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim."). Accordingly, the fact that the maximum-security unit where Plaintiff is housed fails to adhere to TCI minimum standards does not, by itself, support a constitutional claim. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (stating that mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (finding failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Rather, in order to state a cognizable due-process claim regarding his confinement in maximum security, Plaintiff must demonstrate a liberty interest that is protected by the Due Process Clause. *See Wilkinson*, 545 U.S. at 221 ("[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish one of these interests at stake."). To establish such an interest, Plaintiff must show that being deprived of that right or interest imposes on him an "atypical and significant hardship" relative to the ordinary circumstances of prison life. *Sandin*, 515 U.S. at 484.

Whether an inmate's confinement in a maximum-security environment implicates a liberty interest is fact-dependent. *Compare Sandin*, 515 U.S. at 486 (holding assignment to disciplinary segregation for thirty days did not implicate liberty interest), *with Austin*, 545 U.S. at 223–24 (finding placement in maximum security did implicate liberty interest where, in addition to restrictions common to most solitary confinement facilities, classification review only occurred annually and placement in maximum security disqualified inmate from parole consideration). Here, Plaintiff was housed in a maximum-security unit for only two days before he signed this lawsuit, which is hardly an atypical and significant hardship. (Doc. 1, at 5.) Additionally, while Plaintiff complains about the lack of commissary privileges and smaller food portions in maximum security, Plaintiff possesses no liberty interest in obtaining commissary items, and he has not alleged facts indicating that the smaller food portions in maximum security have negatively impacted his health. *Welch v. Spaulding*, 627 F. App'x 479, 482–83 (6th Cir. 2015) (recognizing constitutional right to sufficient food to sustain good health); *Hopkins v. Keefe Commissary Networks Sales*, No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007) ("Inmates have no federal constitutional right to be able to purchase items from a commissary.").

Plaintiff has not presented the Court with any non-conclusory allegations to support a determination that his circumstances are significantly different than those imposed by administrative segregation, which "have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest . . . ." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey*, 62 F.3d at 791 (6th Cir. 1995) (finding that mere

"placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*"); *Webb v. Bucholtz*, No. 1:20-cv-1036, 2021 WL 804721, at *2–3 (W.D. Mich. Mar. 3, 2021) (holding pretrial detainee's ten-month placement in segregation failed to implicate a liberty interest entitling him to due process).

Additionally, Plaintiff contends that he is "treated harsher" and "torture[d]" in maximum-security housing as compared to other pretrial prisoners, which the Court construes as an equal-protection claim. (Doc. 1, at 4.) "To state an equal-protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 299 (6th Cir. 2006)). The fact that Plaintiff has been placed in a maximum-security unit necessarily differentiates him from pretrial detainees in the general population, and therefore, the two groups are not similarly situated. Moreover, Plaintiff has not identified a protected interest in his housing classification, he has not identified himself as a suspect class, and he has not offered any facts from which the Court could infer that his placement in a maximum-security unit lacks a rational basis. Therefore, Plaintiff's allegations fail to state an equal-protection claim. *See Iqbal*, 556 U.S. at 678 (holding conclusory allegations fail to state a constitutional claim).

### vii. Physical Injury

Finally, the Court notes that Plaintiff seeks monetary compensation "for the pain, suffering[,] and continued mistreatment" he has received. (Doc. 1, at 5.) However, under the PLRA, a lawsuit brought by an institutionalized person requires a "physical" injury to permit

12
Case 1:22-cv-00239-TRM-SKL    Document 5    Filed 09/22/22    Page 12 of 13    PageID #: 27

recovery. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."). Plaintiff has not alleged any physical injury as a result of the alleged constitutional violations, and, therefore, financial recovery is not permitted under the PLRA.

### III.     CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* (Doc. 4) is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set for above;

4. The Clerk is **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Even with liberal construction, Plaintiff's complaint fails to state a claim upon which relief may be granted under § 1983, and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A; and

6. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**